

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Lee Brady, Commissioner
Department of Banking
Austin, Texas

Dear Sir:

Opinion No. O-3484
Re: Should a state bank be
required to charge off
at the present time an
uncollectible note given
by a stockholder under
the facts outlined –
and other related questions.

Your letter of April 30, 1941, requesting an opinion
of this department, reads in part as follows:

"A state bank having surplus and undivided
profits in a sum largely in excess of $1,000.00
has heretofore made a loan to a stockholder upon
which there is now owing a balance of $1,000.00.
At the time the loan was made the stockholder was
in good financial condition and there is no reason
to believe that the loan was made with the intent
to subsequently require the borrower to pledge the
stock owned by him to secure the loan. Subsequently
the borrower had financial reverses which rendered
his note uncollectible from any source other than
from the stock held by him in this bank. The bank,
within the past 6 months, required the stockholder
to pledge his stock to secure the payment of the
loan.

"In the light of the above facts we respectfully
submit the following questions:

"1. Should the bank be required to charge
off this note at the present time?

"2. Should the bank at the expiration of
6 months from the date of pledge be

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

required to foreclose its pledge lien
on the stock?

"3.   If the bank should foreclose its pledge
lien upon this stock more than 6 months
after the date of pledge, can the bank
legally buy this stock in at the fore-
closure sale?

"4.   If the bank can legally buy in the stock
at its foreclosure sale for the purpose
of protecting itself against loss, how
long should the bank be allowed in which
to dispose of the stock thus acquired?"

Article 524 of the Revised Civil Statutes provides:

"No state bank or bank and trust company
shall make any loan or discount on the security
of the shares of its own capital stock, nor be
the purchaser or holder of any such shares, unless
such security or purchase shall be necessary to
prevent a loss upon a debt previously contracted
in good faith; and stock so purchased or acquired
shall, within six months after its purchase be
sold or disposed of at public or private sale;
or in default thereof, such bank shall be con-
sidered to have its capital stock impaired to the
extent of the par value of such shares."

Your questions involve a construction of the statute
above quoted, and such a construction will answer your questions.

This statute expresses the State policy to forbid a
State bank or bank and trust company, organized under the laws
of this State, to acquire its own capital stock unless such stock
is acquired by the bank through pledge or other security, or pur-
chase, "necessary to prevent a loss upon a debt previously con-
tracted in good faith."   It further evidences the policy of the

State to be that when such shares of capital stock have been thus acquired the bank shall within six months after its acquisition sell or dispose of the same, under the penalty of a capital stock impairment to the extent of the par value of such shares, if it fails to do so.

No bank can be considered in default where it has acquired its shares of stock either through a foreclosure or outright purchase, under the provisions of this statute; neither is it in default by holding such purchased stock until after the full period within which it is required to dispose of the same, that is, six months.  The bank while holding as pledgee shares of its capital stock has not acquired or purchased the same within the meaning of this statute - it has only acquired a lien thereon - and consequently it cannot dispose of such pledged shares.  There is no such thing known to the law as selling the pledged security dissociated from the debt for which it is pledged - they are inseparable in this respect.  So that upon acquiring the stock at its own foreclosure sale or otherwise through purchase to avoid a loss on a bona fide debt previously contracted, it becomes the owner of such shares, and the duty arises then and only then, upon the part of the bank to sell or dispose of such stock within six months thereafter.  The bank has the entire period of six months within which to make such disposition, and there is no law that would compel the disposition, or visit the penalty for a non-disposition, until that time has expired without such disposition.  Whether the bank will make a speedier disposition, is a matter of sound banking judgment.

In the event the bank fails to dispose of such stock within the permitted time, it suffers the statutory penalty of being considered to have its capital stock impaired to the extent of the par value of such shares, and upon the demand of the Banking Commissioner its officers would be compelled to restore such impairment, in the manner pointed out in Article 365 of the statutes.  This impairment is an artificial impairment rather than a real impairment of capital stock made so by statute as a penalty for the bank's failure to comply with the statute of timely disposition.

The required disposition must be made, or the statutory penalty of impairment to the extent of the par value of the shares held will follow even though as a matter of accounting the bank is otherwise amply solvent and has sustained no capital impairment.

From these considerations your questions should be answered categorically as follows:

1. No question of necessity for charging off the customer's note is presented by the facts stated in your inquiry. Charging off a note secured by a pledge of the bank's own shares of stock is not the penalty provided by the statute and will not be applied. Whether or not a note should be charged off is governed by the principle that such note is carried as an asset of the bank at a value in excess of its real value and to avoid a deception of the public in this respect, the bank will be required to charge the note off in whole or in part according as the circumstances require. This well recognized principle of sound banking has no application to the situation we are considering. There is nothing in your communication indicating that the note as presently secured is not worth its face value.

2. The bank is not in any event required to foreclose its pledge lien on stock hypothecated as security at the expiration of six months from the date of the pledge, neither is it required by law to foreclose such pledge lien at any particular time. The whole matter rests in the exercise of a sound business judgment upon the part of the Board with respect to foreclosure. The law does not compel such foreclosure at any time except as the statutes of limitations might compel such action.

3. The bank is authorized to buy at its own foreclosure sale any stock pledged to it regardless of when such sale takes place. It is not compelled to do so however - another might become the purchaser at such sale.

4. Upon becoming the owner of such stock at its own foreclosure sale or through purchase for the purpose of protecting itself against loss on account of a loan or discount previously made to the customer in good faith the bank is allowed six months thereafter in which to dispose of the stock thus and then acquired.

The rule as to one's becoming the purchaser at his own foreclosure sale is thus stated in 33 Tex. Jur., page 714, Section 26:

> "The pledgee is entitled to purchase the property at the sale foreclosing the lien by which payment of the collateral obligation is secured; and indeed, it is his duty to do so if necessary to prevent the property from being sacrificed."

APPROVED MAY 27, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

OS:EP

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Ocie Speer
Assistant

By

Wm. J. R. King
Assistant

THIS OPINION CONSIDERED AND APPROVED IN LIMITED CONFERENCE